UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

VALVETTA MCGEE-HUDSON                             CIVIL ACTION

VERSUS                                            NO. 3:12-cv-538-JJB-RLB

AT&T

**O R D E R**

Before the Court is Plaintiff's Motion to Compel responses to Plaintiff's Second Set of Interrogatories Nos. 1, 2, 3, 4, 5, 6, 7 and Plaintiff's Second Request for Production of Documents Nos. 1, 2, 6 (R. Doc. 11). Defendant filed an Opposition (R. Doc. 12), to which Plaintiff has replied (R. Doc. 15). For the reasons discussed below, Plaintiff's Motion is GRANTED in part and DENIED in part.

I.   BACKGROUND

In her Complaint, Plaintiff alleges that she worked in a management position as a "Sales Coach" for Defendant[1] until she was terminated for allegedly misusing company credit cards (R. Doc. 1, ¶¶ 3-7). Plaintiff alleges that she—and two "other black female Sales Coaches"[2]—were wrongly terminated by their general manager (Sheila Morgan) "for allegedly violating the [Defendant's] Code of Business Conduct policy, by engaging in inappropriate and unprofessional behavior, including intimidation, fraudulent conduct, dishonesty, misrepresentation of facts, and falsification of company records as it related to expenses" (R. Doc. 1, ¶ 8 and Ex. A). Plaintiff protested her alleged wrongful termination by contacting

---

[1] In its Answer, Defendant states that AT&T Inc. was wrongly identified as Plaintiff's employer in the Complaint and identifies itself as "BellSouth Telecommunications, LLC, which operates under the trade name AT&T Louisiana ('BellSouth')" (R. Doc. 3 at 1 n.1).

[2] Plaintiff does not identify these persons in the Complaint. The parties' briefing and attached documents produced in discovery, however, make it clear that these persons are Lakeycha Bailey and Nicole Wilson.

Defendant's Vice President of Consumer Sales and Services (Deborah Peoples) (R. Doc. 1, ¶11 and Ex. B).  Plaintiff then alleges that Defendant conducted an investigation into possible gender discrimination and its investigator (Donna Smith) concluded that Plaintiff's "action of misconduct did not compare to the misconduct of [certain] male Sales Coaches" (R. Doc. 1, ¶¶ 11-13).

Plaintiff alleges that after violating Defendant's Code of Business Conduct, she and the two "other black female Sales Coaches" did not receive an opportunity to correct their behavior in the same manner as three male Sales Coaches (Brandon Warren, Michael Powell, and Jabari Alexander) (R. Doc. 1, ¶¶ 14, 16).[3]  Plaintiff also alleges that one white female Sales Associate/Team leader (Eva Pierce) falsified company records in violation of Defendant's Code of Business Conduct, but no disciplinary action was taken against her (R. Doc. 1, ¶ 17).  Plaintiff alleges that she was terminated because of her race and gender in "direct violation of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2(k)(1)(A)(i)" (R. Doc. 1, ¶ 18).  Plaintiff seeks damages including past, present, and future loss of wages and/or benefits; loss of earning capacity, pain and suffering, mental anguish, humiliation, inconvenience, and embarrassment; loss of enjoyment of life; and other damages to be proven at trial (R. Doc. 1, ¶ 19).

On January 3, 2013, the court issued a scheduling order requiring discovery to be completed by August 15, 2013 (R. Doc. 6).  After an initial round of discovery, on April 26, 2013, Plaintiff propounded her Second Set of Interrogatories to Defendant and Second Request for Production of Document on Defendant (R. Doc. 11-3 at 1-7).  On May 29, 2013, Defendant served its objections and responses to this discovery (R. Doc. 11-3 at 8-16).  On June 4, 2013,

---

[3] Plaintiff does not identify the race of these three Sales Coaches.

2

Plaintiff requested complete responses to her Second Set of Interrogatories (R. Doc. 11-3 at 19). On July 16, 2013, Plaintiff filed the instant Motion to Compel (R. Doc. 11).

In addition to requesting complete responses to these discovery requests, Plaintiff argues that Defendant failed to comply with Rule 34(b) of the Federal Rules of Civil Procedure by producing "a pile of documents after previous objections were made to Plaintiff's First Requests for Production, that was not organized or labeled to correspond with the categories in the request" (R. Doc. 11 at 3). According to Plaintiff, after she propounded her first set of discovery, Defendant responded with objections and the parties had a telephone conference to discuss those objections (R. Doc. 11-1 at 4). Plaintiff claims that although Defendant agreed to produce all responsive documents to her first requests for production, that production was "not organized or labeled to correspond with the categories" in the first request for production (R. Doc. 11-1 at 4). Plaintiff informed Defendant she would seek court intervention if the documents were not produced "to correspond with the categories in the request, on or before April 12, 2013" (R. Doc. 11-3 at 18). On April 11, 2013, Defendant responded with a letter to Plaintiff purportedly identifying how its discovery responses correlated to Plaintiff's discovery requests (R. Doc. 12, Ex. 2)

Finally, Plaintiff requests attorney's fees pursuant to Rule 37 for the costs associated with bringing her Motion to Compel (R. Doc. 11-1 at 7).

**II.    LAW & ANALYSIS**

Rule 26(b)(1) of the Federal Rules of Civil procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of

3

admissible evidence." *Id*. The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor,* 329 U.S. 495 (1947)). The court may limit discovery if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C).

### a.  Plaintiff's Second Interrogatories and Requests for Production

Plaintiff moves to compel more complete answers to interrogatories and productions of documents regarding investigation reports and complaints relating to Eva Pierce (Interrog. No. 1, and Req. No. 1); the suspension of certain male Sales Coaches (Interrog. No. 2); the discharge of Plaintiff and two "other black female Sales Coaches" (Interrog. No. 3, Req. No. 2); the job description of General Manager Sheila Morgan (Interrog. No. 4); investigation reports relating to Jabari Alexander, Lakeycha Bailey and Nicole Wilson (Interrog. No. 5); the corporate credit card policy training records for Jabari Alexander, Lakeycha Bailey and Nicole Wilson (Interrog. No. 6); and the actions taken by General Manager Sheila Morgan relating to the discharge of Plaintiff and two "other black female Sales Coaches" (Interrog. No. 7, Req. No. 6). In support of this request, Plaintiff broadly argues (1) that she is seeking "clearly relevant discovery to Plaintiff's claims for damages of discrimination and wrongful termination" under Title VII of the 1964 Civil Rights Act and (2) that the interrogatory answers provided and documents produced by Defendant are inadequate (R. Doc. 11-1 at 6-7).

In its Opposition, Defendant argues through supporting documents that it has fully answered the interrogatories and produced all relevant, non-privileged documents (R. Doc. 12).

In her Reply, Plaintiff argues, among other things, that Defendant "blatantly use[s] 'attorney-client privilege' as a tactic and continue[s] to withhold and conceal relevant documents that could substantiate Plaintiff's claims of discrimination and wrongful termination as required" by Rule 26 of the Federal Rules of Civil Procedure (R. Doc. 15 at 6).

The court will address each discrete set of discovery requests and corresponding objections and responses in turn.

### i. Interrogatory No. 1 and Document Request No. 1

Plaintiff asks Defendant to identify and produce documents relating to "all investigation reports and complaint(s) relating to Eva Pierce, including but not limited to the Asset Protection and Ethics Investigation Reports" (R. Doc. 11-3 at 2). Defendant objects on the grounds that these discovery requests are overly broad, seek irrelevant information, violate the privacy rights of non-parties, and seek information protected from discovery by the attorney-client privilege (R. Doc. 11-3 at 9).

Notwithstanding these objections, Defendant represents that it has responded to these discovery requests by producing the Asset Protection Report and internal investigation reports in response to Plaintiff's first set of written discovery, as well as its record of an internal complaint filed by Brandie Small that mentions Eva Pierce (R. Doc. 11-3 at 9). Furthermore, in its Opposition, Defendant provides the court with documents it produced in response to these discovery requests (*see* R. Doc. 12, Ex. 3).[4] Defendant argues that all remaining responsive

---

[4] These documents are Bates numbered BST 0001-0074 (R. Doc. 12-3; R. Doc. 12-4), BST 1670-1676 (R. Doc. 12-8 at 45-56), and BST 1679-1681 (R. Doc. 12-8 at 54-56).

5

documents are protected by the attorney-client privilege as indicated by its privilege log (*see* R. Doc. 12, Ex. 4).

The information requested by Plaintiff appears relevant to demonstrate that she was wrongly terminated based on her race while Eva Pierce, who allegedly violated Defendant's Code of Business Conduct, was not terminated for allegedly similar conduct. The request is narrowly limited to certain investigative reports relating to Eva Pierce.

The court finds that many, if not all, of the documents indicated by Defendant are responsive to Plaintiff's Interrogatory Number 1 and Document Request Number 1. These documents include an Asset Protection Investigative Report relating to Valerie Major-Geter, Angette White, Valvetta McGee Hudson, and Brandie Small; a handwritten complaint letter prepared by Eva Pierce; internal investigations of complaints made against Plaintiff; internal investigations of complaints made by Plaintiff against Eva Pierce and others; internal investigation of complaint by Brandi Small against Eva Pierce and others; and a complaint letter by Eva Pierce.

Defendant has represented that it has produced all non-privileged documents responsive to Interrogatory Number 1 or Document Request Number 1. Because Defendant's privilege log does not identify any investigative reports regarding Eva Pierce, it is unclear to the court whether Defendant has withheld any responsive documents on the basis of "privacy" grounds. To the degree Defendant may have withheld such documents based on "privacy" grounds, Defendant should have anticipated the need for a protective order, and no later than when it was ready to provide the outstanding discovery, Defendant should have promptly moved for a protective order. The party seeking protection has the burden of moving for a suitable protective order. Fed. R. Civ. P. 26(c). If Defendant withheld any non-privileged documents responsive to

Interrogatory Number 1 or Document Request Number 1 on the basis of "privacy" grounds, Defendant shall identify and produce those documents. Otherwise, the court finds that Defendant has fully responded to these discovery requests.

### ii. Interrogatory No. 2

Plaintiff asks Defendant to identify "the person who recommended suspension for the male Sales Coaches, and a brief explanation why the male Sales Coaches were not discharged for misconduct similar to that of the female Sales Coaches" (R. Doc. 11-3 at 2). Defendant objects on the grounds that the interrogatory is vague, ambiguous, violates the privacy rights of non-parties, and does not identify the "male Sales Coaches" who were suspended (R. Doc. 11-3 at 10). Notwithstanding these objections, Defendant responded that it was "not aware of any male sales coaches who engaged in substantially similar misconduct as Plaintiff who did not receive substantially similar treatment" (R. Doc. 11-3 at 10).

Defendant does not argue that this request is irrelevant. As discussed above, Defendant has not sought a protective order regarding discovery of information regarding non-parties. The court agrees with Defendant, however, that this interrogatory request is vague and ambiguous. Furthermore, to fully answer Plaintiff's interrogatory, Defendant must accept the conclusory statement that the "male Sales Coaches" engaged in similar conduct as the "female Sales Coaches." Such discovery is more appropriately sought through a request for admission or through deposition testimony.

That said, it appears from the Complaint and other discovery requests that Plaintiff intended to define these "male Sales Coaches" as Brandon Warren, Michael Powell, and Jabari Alexander (*see* R. Doc. 1, ¶ 16). Defendant implicitly acknowledges that these individuals are likely the "male Sales Coaches" Plaintiff had in mind by identifying them in its Opposition (*see*

R. Doc. 12 at 6). Defendant raises several arguments regarding why the conduct and positions of these individuals are dissimilar to the conduct and position of Plaintiff (R. Doc. 12 at 6-8). Defendant does not argue, however, that Plaintiff's request for the identification of "the person who recommended suspension" of these individuals is irrelevant and, as discussed above, has not sought a protective order allowing it to withhold information on "privacy" grounds.

In her August 10, 2011 letter to Deborah Peoples, Plaintiff identifies Sheila Morgan as the employer who "suspended" Brandon Warren and Michael Powell (R. Doc. 1 at 12). Plaintiff further states that no disciplinary action was taken against Jabari Alexander (R. Doc. 1 at 12). It is unclear from the record, however, whether a person other than Sheila Morgan may have recommended the suspension of these individuals. Therefore, if known to Defendant, Defendant shall identify "the person who recommended suspension" for Brandon Warren, Michael Powell, and Jabari Alexander. Defendant need not respond to the remainder of Interrogatory Number 2 as it is vague and ambiguous.

### iii. Interrogatory No. 3 and Document Request No. 2

Plaintiff asks Defendant to identify the steps taken by "Vice President Deborah Peoples . . . prior to making the final decision to discharge Plaintiff and the other black female Sales Coaches" and to identify and produce all documents related to that decision (R. Doc. 11-3 at 2). Defendant objects on the grounds that the interrogatory and document request are overly broad, seek irrelevant information, violate the privacy rights of non-parties, and seek information protected from discovery by the attorney-client privilege and/or work product immunity (R. Doc. 11-3 at 10).

Notwithstanding these objections, Defendant responded by stating that "Vice President People made the decision to terminate Plaintiff's employment after reviewing the Asset

Protection report, the internal complaints against Plaintiff, and discussing the matter with Human Resources and Legal" and that all non-privileged documents responsive to the document request had been produced (R. Doc. 11-3 at 10).  In its opposition, Defendant also states that the responsive documents are the same as those produced in response to Document Request No. 1 (R. Doc. 12-3) as well as other documents produced by Defendant (R. Doc. 12-1).

It appears to the court that Defendant has responded fully to Interrogatory Number 3 by detailing the steps Vice President Deborah Peoples took prior to making the final decision to discharge Plaintiff and the "other black female Sales Coaches."  Similarly, the court finds nothing in the record controverting Defendant's representation that it has produced all non-privileged documents responsive to Document Request Number 2.

### iv.  Interrogatory No. 4

Plaintiff asks Defendant to describe in detail the job description of General Manager Sheila Morgan and to identify all documents relating to that job description (R. Doc. 11-3 at 3). Defendant responded by producing the job description for its General Managers (R. Doc. 11-3 at 10).  Defendant has provided that job description for the court's review (*see* R. Doc. 12, Ex. 3).[5] Defendant also informs the court that Plaintiff has deposed Sheila Morgan regarding her employment responsibilities (R. Doc. 12 at 8).

The court finds that the General Manager job description provided by Defendant sufficiently responds to Interrogatory Number 4.   Furthermore, the deposition of Sheila Morgan provided the Plaintiff ample opportunity to obtain the information sought.

---

[5] This document is Bates numbered BST 1677 – 1678 (R. Doc. 12-8 at 52-53).

### v. Interrogatory No. 5

Plaintiff asks Defendant "why were only three Sales Coaches terminated and not all the Coaches for complying with Valerie Major-Geter's instructions to give their corporate credit card and global login to Eva Pierce to make AT&T business related purchase, when Pierce used all the Coaches' corporate credit card and submitted their vouchers" and to identify "all investigation reports alleging misuse of company assets relating to Jabari Alexander, Lakeycha Bailey and Nicole Wilson, including but not limited to the Asset Protection Investigation Reports" (R. Doc. 11-3 at 3).

In its discovery response, Defendant referenced its responses to Plaintiff's first set of interrogatories numbered 13 and 23 (R. Doc. 11-3 at 11).   Both of those responses referenced Defendant's position statement to the U.S. Equal Opportunity Commission ("EEOC") (R. Doc. 12 at 9 n.1).  Furthermore, in those earlier responses, Defendant agreed to produce "a copy of the vouchers submitted on Plaintiff's corporate card and copies of any associates receipts in Defendant's possession"; "a copy of its Asset Protection Department Report regarding inappropriate credit card transactions"; and "any expense reports by Bailey, Alexander and Wilson from January 2011 through June 2011" (R. Doc. 12 at 9 n.1).[6]

Defendant states that it is not aware of any investigation of Jabari Alexander, Lakeycha Bailey and Nicole Wilson regarding misuse of company assets and, accordingly, has not produced any additional investigation reports (R. Doc. 12 at 10).  In reply, Plaintiff appears to argue that she and two "other black female Sales Coaches" were terminated for complying with instructions from Valerie Major-Geter regarding corporate credit card use, but Jabari Alexander, Lakeycha Bailey and Nicole Wilson were not terminated for the same conduct (R. Doc. 15 at 8-

---

[6] Plaintiff has not argued that these productions have not been made.

10).  In essence, Plaintiff is seeking information regarding an investigation for credit card misuse by Jabari Alexander, Lakeycha Bailey and Nicole Wilson that Defendant claims never occurred.  Putting aside the merits of Plaintiff's claims, the court finds that Defendant has fully responded to Interrogatory Number 5.

### vi.  Interrogatory No. 6

Plaintiff asks Defendant "[i]f the Sales Coaches received training for the corporate credit cards and if there were credit card policies or procedures in place why would all the Managers comply with Valerie Major-Geter's instructions, and not recognize it's a policy violation to give Eva Pierce their corporate credit card to make AT&T business related purchases" (R. Doc. 11-3 at 3).  Plaintiff further asks Defendant to identify "the corporate credit card policy training records for Jabari Alexander, Lakeycha Bailey and Nicole Wilson" (R. Doc. 11-3 at 3).

Defendant responded by stating it "has no idea why Plaintiff decided to violate Company policy in the manner stated in BellSouth's EEOC position statement and in the Asset Protection Report.  Plaintiff understood and knowingly violated the rules regarding Company credit card use.  Alexander, Bailey and Wilson received the same training and coverage as Plaintiff insofar as proper use of Company credit cards (see BST 1144 – 1259).  See also training histories for Jabari Alexander, Lakeycha Bailey and Nicole Wilson produced herewith." (R. Doc. 11-3 at 11-12).

The court finds that Defendant has responded fully to Interrogatory Number 6.  The first part of Plaintiff's interrogatory essentially seeks an inquiry into the minds of various Managers with regards to their understanding of Defendant's policies.  For the purpose of responding to this interrogatory, Defendant's answer is acceptable.  The second part of Plaintiff's interrogatory is fully responded to by Defendant's production of documents as explained in Defendant's

Opposition (R. Doc. 12 at 10) and in the documents attached to the Opposition (*see* R. Doc. 12, Ex. 3). [7] Although Plaintiff disputes Defendant's assertion that Alexander, Bailey and Wilson received the same training and coverage as Plaintiff with regard to the proper use of Defendant's credit cards (R. Doc. 15 at 9), the court is satisfied that Defendant has fully identified "the corporate credit card policy training records for Jabari Alexander, Lakeycha Bailey and Nicole Wilson."

### vii.   Interrogatory No. 7 and Document Request No. 6

Plaintiff asks Defendant to identify the action taken by General Manager Sheila Morgan "upon conclusion of the Ethics and Asset Protection Investigations relating to the discharge of Plaintiff and the other two black female Sales Coaches" and to identify and produce all documents relating to the discharge by Sheila Morgan (R. Doc. 11-3 at 3).

Defendant objects on the grounds that these discovery requests are overly broad, seek irrelevant information, and violate the privacy rights of non-parties (R. Doc. 11-3 at 12, 16). Notwithstanding these objections, Defendant claims to have already produced all non-privileged relevant documents responsive to these discovery requests (R. Doc. 11-3 at 12). Furthermore, Defendant states that "Sheila Morgan was made aware of the results of the internal investigation complaints and against Plaintiff and others and she was made aware of the Asset Protection investigation results [and she] was also informed of Vice President Peoples decision to terminate

---

[7] These documents include "screenshots of electronic records reflecting issuance of corporate credit cards (BST 1144-1146) [R. Doc. 12-5 at 125-127]; directives given to plaintiff and her peers pertaining to company credit card use (BST 1147-1155) [R. Doc. 12-6 at 1-9]; AT&T Corporate Card Policy (BST 1156-1173) [R. Doc. 12-6 at 10-29]; ExpenseNet Guide (BST 1174-1221) [R. Doc. 12-6 at 30-75; R. Doc. 12-7 at 1-4]; additional emails and coverage of Plaintiff and her peers regarding company expense vouchering processes (BST 1222-1239) [R. Doc. 12-7 at 5-22]; AT&T Global Travel and Expense Policy (BST 1240-1259) [R. Doc. 12-8 at 1-21]; Bailey training history (BST 1647-1654) [R. Doc. 12-8 at 22-29]; Wilson training history (BST 1655-1662) [R. Doc. 12-8 at 30-37]; and Alexander Training history (BST 1663-1669) [R. Doc. 12-8 at 38-44]" (R. Doc. 12 at 10).

the Plaintiff" (R. Doc. 11-3 at 12). Finally, Defendant argues in its Opposition that Plaintiff has had an opportunity to depose Sheila Morgan and inquire about "her actions upon review of the Ethics and Asset Protection Investigation reports" (R. Doc. 12 at 5). Defendant has produced an excerpt from the deposition of Sheila Morgan (R. Doc. 12-10).

Defendant's response details the information received by Sheila Morgan upon the conclusion of the ethics investigation related to Plaintiff's discharge, but it does not detail, as requested, any actions taken by Sheila Morgan. This discovery seeks relevant information, is narrowly defined, and is not subject to a protective order.

As with Interrogatory Number 4, the deposition of Sheila Morgan provided the Plaintiff ample opportunity to obtain the information sought. That said, if Defendant withheld any non-privileged documents responsive to Interrogatory Number 7 or Document Request Number 6 on the basis of "privacy" grounds, Defendant shall identify and produce those documents. Otherwise, the court finds that Defendant has fully responded to these discovery requests.

### b. Production of Documents in Accordance with Fed. R. Civ. P. 34

Plaintiff has further argued that, in response to her First Request for Production, the "Defendants produced documents that [were] not organized or labeled to correspond with the categories in the request" as required by Rule 34(b) of the Federal Rules of Civil Procedure (R. Doc. 11-1 at 4-5). Defendant responds by stating it has produced documents with cover sheets describing the nature of the documents (R. Doc. 12 at 2). Defendants have also provided for the court a copy of its April 11, 2013 letter identifying which discovery responses correspond to which discovery requests (R. Doc. 12-2).

After reviewing the correspondence between the parties, as well as the example Bates numbered documents produced by Defendant attached to its opposition, the court is satisfied that

Defendant has complied with Rule 34(b) in its production in response to Plaintiff's First Request for Production.

### c. Expenses

Under Rule 37(a)(5)(C) of the Federal Rules of Civil Procedure, if a motion to compel discovery is granted in part and denied in part, the court may apportion the reasonable expenses for the motion. The Court finds that the parties shall each bear their own costs in connection with the Motion.

## III. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Plaintiff's Motion to Compel is **GRANTED IN PART AND DENIED IN PART:**

Plaintiff's Motion to Compel responses to Interrogatory Numbers 1, 2, and 7 and Request for Production Numbers 1 and 6 is **GRANTED** to the extent provided by this Order. In the supplemental responses and productions ordered in this ruling, Defendant is not required to duplicate any information and documents that have already been produced to Plaintiff. Defendant must produce supplemental answers to Interrogatory Numbers 1, 2, and 7 and supplemental responses to Request for Production Numbers 1 and 6, without objections, by October 17, 2013.

Plaintiff's Motion to Compel responses to responses to Interrogatory Numbers 3, 4, 5, and 6 and Request for Production Number 2 is **DENIED**.

Defendant may move for a protective order relating to the disclosure and handling of any documents produced in accordance with this Order, by October 17, 2013. Any proposed protective order may be mutually agreed upon by the parties or submitted by Defendant after

conferring or attempting to confer with Plaintiff on the terms of such an order, as required by Rule 26(c)(1).

Plaintiff's request for attorney's fees associated with its Motion to Compel is **DENIED**. Each party shall bear their own costs.

Signed in Baton Rouge, Louisiana, on October 11, 2013.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**