UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

VALVETTA McGEE-HUDSON

VERSUS

BELLSOUTH
TELECOMMUNICATIONS, LLC

CIVIL ACTION

NO. 12-538-JJB

**RULING AND ORDER**

This matter is before the Court on a motion (doc. 18) for summary judgment brought by Defendant, BellSouth Telecommunications, LLC. Plaintiff, Valvetta McGee-Hudson, has opposed this motion by way of filing a cross-motion (doc. 25) for summary judgment. Defendant has filed an opposition (doc. 30) and a reply (doc. 29). Oral argument is unnecessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the Defendant's motion for summary judgment is GRANTED and the Plaintiff's cross-motion for summary judgment is DENIED.

I.   Background

Plaintiff, Valvetta McGee-Hudson ("McGee-Hudson"), an African American female and former employee of Defendant, BellSouth Telecommunications, LLC ("BellSouth"), brings this action against BellSouth alleging that she was terminated by BellSouth because of her race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The following facts are either undisputed or taken from materials submitted by McGee-Hudson as the original non-moving party:

McGee-Hudson was hired by BellSouth in 2003 as a Sales Associate. During her tenure with BellSouth, she served in several capacities, eventually being elevated to a management position as a Sales Coach in the Baton Rouge office of the Consumer Services Department.

1

McGee-Hudson was one of several Sales Coaches on a team that reported to Valerie Major-Geter ("Major-Geter"), the Central Sales Manager. Major-Geter reported to the General Manager, Sheila Morgan, who reported to the Vice President, Deborah Peoples. As a member of management, McGee-Hudson was not covered by the collective bargaining agreement between BellSouth and the Communication Workers of America ("CWA"). Therefore, while a Sales Associate could file a grievance with the CWA, a management level Sales Coach could not.

After being promoted to Sales Coach, McGee-Hudson received a company credit card. Sometime after receiving her company credit card, McGee-Hudson gave her credit card and her secret AT&T User Identification computer access code to Eva Pierce, a Sales Associate on Major-Geter's team. McGee-Hudson claims that she, along with all of the Sales Coaches, gave her credit card and information to Eva Pierce because she was directed to do so by Major-Geter. McGee-Hudson assumed that any purchases made on the card would be for the Consumer Services Department. However, an investigation by BellSouth's Asset Protection Department proved McGee-Hudson's assumption to be incorrect.

The investigation, the findings of which are recorded in the Asset Protection Report (doc. 25-2, Exh. 2), revealed that the cards of McGee-Hudson, Angette White, and Brandie Small were used by Pierce to make over $21,000 in unauthorized purchases consisting mainly of food purchases and office furniture. The report revealed that over $12,000 of that total is attributable to McGee-Hudson's credit card. BellSouth also conducted an Ethics investigation based upon an employee's anonymous complaint that McGee-Hudson and others sent harassing emails and text messages to their fellow employees. After the findings of these investigations were revealed, the decision was made to terminate the employment of McGee-Hudson, Major-Geter, Angette

2

White, and Brandie Small. In a termination letter dated July 25, 2011, BellSouth stated its reasons for McGee-Hudson's termination as follows:

> During a recent Ethics and Asset Protection investigation, there was evidence to substantiate that you demonstrated poor judgment in leadership. Specifically, the investigations revealed that you violated the Code of Business Conduct policy, by engaging in inappropriate and unprofessional behavior, including intimidation, fraudulent conduct, dishonesty, misrepresentation of facts, and falsification of company records as it relates to expenses.

(Doc. 25-2, Exh. 1)

After her termination, McGee-Hudson filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which issued a no-cause determination on her charge. Thereafter, McGee-Hudson, as a *pro se* litigant, brought the matter to this Court where it currently stands. McGee-Hudson argues that she was wrongfully terminated because of her race and gender in violation of Title VII. She alleges that BellSouth's given reasons for her termination were false and merely used to justify an unlawful termination predicated on impermissible racial and gender-based grounds. BellSouth responds by arguing that McGee-Hudson has failed to make a *prima facie* showing of discrimination based on race or gender. BellSouth further argues that even if McGee-Hudson has made such a *prima facie* showing, which it insists she has not, she has failed to adduce evidence showing that the reasons given for her termination were mere pretext intended to obfuscate discriminatory purposes.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at

3

trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322-23.

### B. Title VII Legal Standard

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race…[or]…sex…" 42 U.S.C. § 2000e-2(a)(1). Where an employment discrimination claim is based on circumstantial evidence, courts use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Under that framework, a plaintiff must first establish a *prima facie* case of

discrimination to survive summary judgment. *Id.* at 556–57. Once the plaintiff has established a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for the decision. *Id.* at 557. Once the employer has provided its reasons, the employee can avoid summary judgment by showing that the employer's reasons are but a pretext for discrimination. *Id*.

To establish a *prima facie* case of discrimination on the basis of race or gender, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the job in question; (3) she was discharged from her job; and (4) she did not violate the work-rule for which she was fired, or if she did, a similarly situated employee outside of her protected class was not discharged for violating the same rule. *See Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Martin v. J.A.M. Distributing Co.*, 674 F.Supp.2d 822, 832-33 (E.D. Tex. 2009) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)). To satisfy the fourth prong of the *prima facie* case, the plaintiff must demonstrate that she was treated differently than non-protected and similarly situated employees under "nearly identical" circumstances. *Mayberry*, 55 F.3d at 1090.

### C. Race-Based Discrimination

BellSouth does not contest that McGee-Hudson has satisfied the first three prongs of the *prima facie* showing. McGee-Hudson is African American, there is no contention that she was not qualified for her job, and the record reflects that she was discharged by a termination letter dated July 25, 2011. Therefore, the Court must determine whether McGee-Hudson has satisfied the fourth prong of the *prima facie* analysis.

Reading *pro se* litigant McGee-Hudson's cross-motion generously, it appears as though she is arguing that she did not violate the AT&T Code of Business Conduct policy ("Code of

5

Conduct") and even if she did, a similarly situated white female was not discharged. To this first point, McGee-Hudson contends that she did not receive any training concerning the credit card use procedures and therefore did not knowingly violate the credit card policy. She also contends that she did not send harassing text or email messages to her fellow employees. BellSouth does not appear to make any argument in its motion addressing whether or not McGee-Hudson in fact violated a rule, instead choosing to focus on the requirements under a purely disparate impact claim. After reviewing the evidence presented on summary judgment, the Court finds that there is a genuine issue of material fact as to whether McGee-Hudson actually violated the Code of Conduct. While BellSouth presents evidence, including an Asset Protection and Ethics investigation, to support that McGee-Hudson violated company rules, McGee-Hudson avers through evidence, including a sworn affidavit, that she did not violate the credit card misuse policy and that she never sent harassing email or text messages to her fellow employees. Based upon these circumstances, a reasonable trier of fact could conclude that McGee-Hudson's actions did not actually violate the Code of Conduct.

Alternatively, McGee-Hudson argues that even if she did violate the Code of Conduct, a similarly situated white female, employee was not discharged for the same violation. In response, BellSouth argues that McGee-Hudson's argument must fail because the white female employee was not similarly situated to McGee-Hudson as the employee was non-management and covered under the collective bargaining agreement with the CWA.

To show disparate impact, the plaintiff must demonstrate that "white employees were treated differently under circumstances 'nearly identical' to [hers]." *Mayberry*, 55 F.3d at 1090. Courts have found that employees with different jobs and responsibilities are not similarly situated or in nearly identical circumstances. *See Wyvill v. United Companies Life Ins. Co.*, 212

F.3d 296, 305 (5th Cir. 2000); *Hockman v. Westward Communications, .L.L.C.*, 282 F.Supp2d 512, 528 (E.D. Tex. 2003). Here, McGee-Hudson has identified Eva Pierce as the white female employee who allegedly received more favorable treatment than her. Eva Pierce is a Sales Associate which, unlike a Sales Coach, is a non-management position. These positions have different titles as well as different responsibilities. Additionally, these positions are afforded different protections in that, under the agreement between BellSouth and the CWA, there is a four-step progressive disciplinary policy that includes counseling, warning, suspension, and termination. As a management employee not covered under the collective bargaining agreement, McGee-Hudson was not entitled to benefit from this progressive disciplinary policy. McGee-Hudson fails to identify another white employee who engaged in the same violation of the Code of Conduct under nearly identical circumstances. Therefore, she fails to make a *prima facie* case on this basis.

### D. Gender-Based Discrimination

Finding as the Court has that there is a genuine issue of material fact as to whether McGee-Hudson violated the Code of Conduct, the Court will turn to whether McGee-Hudson has pointed to similarly situated male employees that were treated more favorably than her under nearly identical circumstances. The Court finds that she has not.

To support her disparate impact claim, McGee-Hudson asserts that Brandon Warren, Michael Powell, and Jabari Alexander, all African American males, violated the Code of Conduct but were not terminated. Instead, she avers, all of these men were given the opportunity to correct their behavior while her employment was terminated. BellSouth argues in response, that none of these men are appropriate comparators because they were accused of violating different rules than the ones at issue here; specifically, none of these men were accused of

7

misusing their company issued credit card or sending harassing text or email messages. BellSouth further contends that Michael Powell, as an Acting Sales Coach, is not an appropriate comparator because he and McGee-Hudson had different titles and responsibilities.

In addition to showing that the male comparators had similar jobs and responsibilities, *see Wyvill*, 212 F.3d at 305, McGee-Hudson must demonstrate that they engaged in similar misconduct in all relevant respects. *Okoye*, 245 F.3d at 514 (citing *Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 97 (5th Cir. 1991). In *Okoye*, the Fifth Circuit found that the three comparators to which the plaintiff pointed to support her claim were not similarly situated because though they committed violations of the jail's policy, such violations were dissimilar from her own alleged violation. *Id.* Here, the violations of the Code of Conduct of Brandon Warren, Michael Powell, and Jabari Alexander are factually dissimilar from those committed by McGee-Hudson.

Brandon Warren is a former Sales Coach who was involved in a consensual sexual relationship with a Sales Associate. Michael Powell was an Acting Sales Coach at the time of his infraction, which concerned a report that he had conducted a Sales Associate call observation when he had not done so. Jabari Alexander is a Sales Coach who allegedly allowed an employee that came to work intoxicated to sleep on the job while on the clock. Even assuming that these violations of the Code of Conduct are true, they do not demonstrate that McGee-Hudson's situation was nearly identical to these employees. None of these employees were accused by BellSouth of credit card misuse. Furthermore, none of these employees were accused of sending harassing text messages or emails to subordinates. Therefore, these circumstances present facts that are dissimilar from those involved in the present matter. *See Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177 (5th Cir. 1990) (finding that employees who engaged in different violations

Case 3:12-cv-00538-JJB-RLB   Document 31   02/19/14   Page 8 of 11

of company policy were not similarly situated). Accordingly, McGee-Hudson has failed to make a *prima facie* showing disparate treatment based on her gender.

### E. Pretext

Assuming, *arguendo*, that McGee-Hudson has established a *prima facie* case, the Court finds that BellSouth has articulated legitimate reasons for terminating her employment. To satisfy its burden, BellSouth has stated that the legitimate, non-discriminatory reasons for terminating McGee-Hudson's employment were that it found, after conducting internal investigations, that she violated the Code of Conduct when she misused her company credit card and sent threatening and harassing text messages and emails to other employees. McGee-Hudson argues that these reasons are false because she did not misuse her company credit card, but rather Eva Pierce did, and she did not send harassing or threatening text messages and emails to other employees. She contends, therefore, that these proffered reasons are merely a pretext, hiding the fact that she was fired because of her race and gender. McGee-Hudson's argument fails to demonstrate a discriminatory motive as courts are not concerned with whether or not the employer's decision was in error; but rather courts must determine if the decision was motivated by discriminatory intent. *Mayberry*, 55 F.3d at 1091; *see also Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 958 (5th Cir. 1993) ("The employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be.").

Once the defendant has proffered legitimate non-discriminatory reasons for the plaintiff's termination, the plaintiff can avoid summary judgment if she can adduce sufficient evidence to (1) demonstrate that the defendant's proffered reasons were not the true reasons for her termination and (2) that the defendant was actually motivated by unlawful discrimination. *See Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.2d 137, 141 (5th Cir.

9

1996); *Bodenheimer*, 5 F.3d at 957. McGee-Hudson has failed to adduce any evidence to demonstrate either that the reasons offered by BellSouth were not the true reasons for her termination or that BellSouth was actually motivated by unlawful discrimination. Even if the Court was to generously read McGee-Hudson's cross-motion for summary judgment to argue that evidence of her disparate treatment is enough to create a reasonable inference of discrimination, McGee-Hudson would still fail to satisfy her burden given that the Court has already found that the white female and male employees to whom she references were not similarly situated to her under nearly identical circumstances. Furthermore, the only evidence that McGee-Hudson offers that could conceivably go to a discriminatory motive is the testimony of Sheila Morgan in which she states that during her 34 years with BellSouth, there have been claims of racial discrimination levied against her, none of which were substantiated. (Doc. 25-2, Exh. 10). This evidence is insufficient to demonstrate a discriminatory motive. *See Mayberry*, 55 F.3d at 1092 (refusing to entertain the argument that past findings of racial discrimination is probative of present discriminatory intent). Finally, she has not adduced any evidence to demonstrate any animus towards women. Accordingly, McGee-Hudson has failed to satisfy her burden to prove that her employment was terminated because of unlawful discrimination.

### III.    Conclusion

In sum, the Court finds that there is a genuine issue of material fact as to whether McGee-Hudson actually violated the work-rule of which she stands accused. However, she has failed to show disparate treatment based upon her race and gender. Finally, while the Court believes that it is lamentable that McGee-Hudson was discharged from her employment for an unfortunate yet grave miscalculation of judgment, she has failed to satisfy her ultimate burden of proving that there was a discriminatory motive for her termination in the face of the legitimate non-

Case 3:12-cv-00538-JJB-RLB    Document 31    02/19/14    Page 10 of 11

discriminatory reasons proffered by BellSouth. Accordingly, and for the reasons stated herein, **IT IS ORDERED** that BellSouth's motion (doc. 18) for summary judgment is **GRANTED** and all of the Plaintiff's claims are **DISMISSED**. **IT IS FURTHER ORDERED** that McGee-Hudson's cross-motion for summary judgment (doc. 25) is **DENIED**.

Signed in Baton Rouge, Louisiana, on February 19, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**